# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0900-20

A.M.,

    Plaintiff-Appellant,

v.

J.P.M.,

    Defendant-Respondent.

_____

Argued March 3, 2021 – Decided September 10, 2021

Before Judges Ostrer, Accurso and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-0408-21.

Susan McCue argued the cause for appellant (Central Jersey Legal Services, Inc., attorneys; Susan McCue, on the briefs).

Nicholas T. Delaney argued the cause for respondent (Law Office of Katherine G. Houghton, attorneys; Nicholas T. Delaney, on the brief).

PER CURIAM

Plaintiff A.M. appeals from the denial of her application for a final restraining order against her husband defendant J.P.M. pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35 and the dismissal of the temporary restraining order against him.[1] Although the judge found defendant committed the predicate act of harassment pursuant to N.J.S.A. 2C:25-19(a)(13), he failed to consider other acts alleged in plaintiff's complaint, including assault and criminal mischief. More important, he let plaintiff's subjective fear of defendant dictate whether an FRO was necessary to protect plaintiff from an immediate danger or to prevent further abuse instead of considering the statutory factors the Legislature established in N.J.S.A. 2C:25-29(a)(1) to (6).

Specifically, the judge declared "the plaintiff's fear is important and goes to the heart of whether or not even the plaintiff feels that she is in some immediate danger." He found "a plaintiff would know better than the court whether or not she actually is in any immediate danger." Because the judge determined plaintiff didn't "really believe[] that she's in some immediate danger

---

[1] We granted plaintiff's emergent motion to stay the final order pending our resolution of this appeal and reinstated the temporary restraining order, remanding to the judge presiding over the parties' divorce for the limited purpose of deciding whether the order should be amended to permit defendant parenting time and, if so, under what conditions.

A-0900-20

from the defendant," he found plaintiff "is [not] in any immediate danger from [defendant]," and, accordingly "conclude[d] that there is not a reason to have a restraining order going forward to protect her from further abuse."

Because a plaintiff's subjective fear of the defendant is not the test under the second prong of Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006), and plaintiff is entitled to the court's consideration of every theory alleged in her complaint, we vacate the order denying the FRO, reinstate the TRO and remand for a new hearing before a different judge.

The essential facts as to what happened to prompt plaintiff's application for a TRO are not in dispute. The parties' marriage was foundering. Defendant had filed for divorce, and the reconciliation they were attempting was not going well. Plaintiff was trying to sleep in on a Sunday morning having worked the night shift. The parties were arguing and plaintiff got up to be with the parties' three young children. Defendant had started in on a bottle of vodka by a little after noon.

At some point, defendant texted plaintiff that he was leaving. Plaintiff started to walk through the house looking for him and saw him outside. According to plaintiff, defendant charged into the house, highly intoxicated, saying "f… this . . . I'm not f…ing doing this anymore, I'm gonna go kill myself."

3

Defendant had attempted to hang himself several months earlier, leading to a nine-day hospitalization. Plaintiff thus took his threat seriously and said she was going to call the police.[2] Defendant "came at [her]," attempting to wrest the phone from her grasp.

Defendant ended up twisting plaintiff's arm behind her back and pinning her face down on the couch, causing her pain and difficulty breathing. She

---

[2] Plaintiff's counsel attempted to explore this history with plaintiff in an effort to establish the predicate act of harassment. Defense counsel objected on the basis it was not relevant. The court asked whether plaintiff was attempting to establish that "I'm going to kill myself is a statement offered with purpose to alarm the other individual[?]" When plaintiff's counsel confirmed that was what she was arguing, the judge said, "I'll allow just a little bit more with respect to that but I sincerely doubt that a restraining order would ever be given to someone because the defendant threatened to kill himself."

We do not agree with the judge that threats of suicide by a defendant would not support entry of a domestic violence restraining order. See Julie Saffren, Professional Responsibility in Civil Domestic Violence Matters, 24 Hastings Women's L.J. 3, 19 (2013) (describing "threats of suicide and self-harm" as red flags for high lethality domestic violence cases); Sally F. Goldfarb, Reconceiving Civil Protection Orders for Domestic Violence: Can Law Help End the Abuse Without Ending the Relationship?, 29 Cardozo L. Rev. 1487, 1539-40 (2008) (explaining researchers have identified "threats of homicide or suicide" as risk factors for future severe violence between perpetrators and victims of domestic violence); Catherine F. Klein & Leslye E. Orloff, Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law, 21 Hofstra L. Rev. 801, 848 n.236, 863 (1993) (noting "[d]omestic violence consists of a wide range of behaviors, including . . . suicide threats or attempts" and describing how "[b]atterers often make threats of suicide as a method of exerting control over their battered intimate partner").

A-0900-20

couldn't move. The children were present and the parties' four-year-old son jumped on defendant's back, hitting him and yelling at him to get off his mother. Plaintiff yelled to her daughter to run outside and scream for help. The child, seven years old, ran out the front door, crying and screaming for help. The neighbors heard the child's screams and entered the house, causing defendant to release plaintiff and run into the backyard. The parties' Ring doorbell captured some of the mayhem.

When defendant let her go, plaintiff grabbed the children, ran to her neighbor's house and called the police. The son who had been trying to fight off his father, ran back into the house crying for him. Plaintiff followed the boy and the two saw defendant in the backyard standing on a stool with a rope around his neck. When police arrived, defendant ran inside and locked the doors. The day ended in a three-hour standoff between defendant and a SWAT team, some of which plaintiff could view on the Ring doorbell application on her phone, including defendant throwing what appeared to be a brick at police. While barricaded inside, defendant caused considerable damage, breaking two front windows, the front door, blinds and a ceiling lamp in the kitchen, the dining room table, and shattering picture frames in the upstairs hallway. He also set

5

fire to and burned the dining room chairs, the rug and every step of the stairway runner to the second floor.

Plaintiff testified she was seeking a restraining order to ensure the safety of herself and their children and to prevent "[s]omething like this" from happening again. Defendant's counsel did not question plaintiff about her complaint alleging assault, criminal restraint, criminal mischief and harassment. Instead, he focused on plaintiff having "expressed [her] willingness to others outside of this case to drop the DV, so long as [defendant] gave up the house." Plaintiff admitted having such conversations, but claimed defendant's friend reached out to her about dropping the charges. Counsel also asked whether plaintiff had a similar conversation with her sister, which plaintiff denied, saying "I don't even speak to my sister."

Plaintiff's counsel objected to this line of questions on relevancy grounds. Defendant's counsel contended the questions went to plaintiff's credibility. The court overruled the objection, finding the question of whether plaintiff was willing to drop the restraining order in exchange for defendant signing over his interest in the house very relevant because it "would go to the heart of whether or not the plaintiff is truly fearful of the defendant."

A-0900-20

Defense counsel also asked whether it was true defendant had gotten a restraining order against her a few months before this incident. Plaintiff admitted he had, and that she had scratched his neck in the course of an argument between the two. Plaintiff also testified that defendant injured her in that argument and that she had attempted to get a restraining order against defendant but had been denied. Plaintiff admitted she had not been allowed to see their children for several weeks as a result of that order, causing her much anguish, and that defendant dismissed the TRO when the parties agreed to reconcile.

Defendant called his friend and plaintiff's sister, both of whom testified briefly about conversations or texts with plaintiff in which she expressed a willingness to drop the restraining order, or the pending criminal charges (the witnesses were not clear about which) in exchange for defendant signing over his half of the house to her.

Defendant testified in his own behalf. He claimed he drank an entire bottle of vodka in about four hours and had no recollection of much of the events on the day of the standoff. He admitted he had no reason to doubt plaintiff's testimony about him twisting her arm and pinning her to the couch, but testified he had never hit or attempted to hurt her during their nine years of marriage. Defendant also testified he spent nine days in the hospital receiving treatment

7

after the standoff, including for alcohol dependency, that doctors increased his anti-depressant medication, and that he had since continued weekly outpatient treatment and joined Alcoholics Anonymous. Defendant testified he was "embarrassed about the whole thing" and basically ashamed of himself.

In his summation, defense counsel argued this was "a one-off" event, and plaintiff's conversations with her sister and defendant's friend "show[] there is no fear here" and thus no need for entry of an FRO, especially as defendant had no desire to reconcile with plaintiff.

Plaintiff's counsel argued plaintiff had established the predicate act of assault and harassment and although asserting the extent of the damage defendant caused to their home could also qualify as criminal mischief, said she would focus her remarks on assault and harassment as plaintiff needed to establish only one predicate act under the statute. Plaintiff's counsel also disagreed with defense counsel's focus on plaintiff's subjective fear of defendant, saying, "[t]he second prong of Silver is that the victim needs the protection because she is potentially subject to further abuse or the possibility of immediate danger from this particular abuser. It has absolutely nothing to do with fear, whether that's objective or subjective." Counsel argued plaintiff had easily established a predicate act and that "the extreme nature" of defendant's

8

conduct the day of the standoff, his psychiatric history, and his substance abuse history all indicate the potential for further abuse in the absence of an FRO.

The judge, although noting the several predicate acts plaintiff had alleged in her complaint, stated that he was "going to focus on harassment." The judge stated he believed plaintiff's testimony about how the altercation between the parties happened, and concluded defendant had committed an act of harassment against plaintiff under N.J.S.A. 2C:33-4(b). The judge acknowledged defendant's argument that plaintiff is "not fearful" and plaintiff's argument "that fear is not necessary," but said he "beg[ged] to differ with [plaintiff] on that." The judge opined "[t]he plaintiff's fear is important and it goes to the heart of whether or not even the plaintiff feels that she is in some immediate danger, and in [his] view a plaintiff would know better than the court whether or not she actually is in any immediate danger."

Turning to the evidence in the record "to help the court decide if she is [fearful]," the judge noted

> a general vague statement [in the complaint] alluding to domestic violence and then I find out that there's a [temporary] restraining order that the defendant obtained against the plaintiff, so I have a plaintiff accused of previously attacking physically the defendant and he testified that he was injured in his

9

arm.[3]   So, um, under what circumstance might someone find that this plaintiff actually is fearful and thinks that she's in some danger from the defendant?

The judge found "the other tricky part" to be that plaintiff

> actually makes sort of a back-door attempt to communicate with the defendant.  She knows better than to contact him directly by phone, text, e-mail, whatever.  She knows that that would indicate strongly that she has, in essence, . . . put him in a situation to violate the restraining order.  She's not trying to do that.  She would rather talk to her sister and, uh, the defendant's friend about whether or not the defendant would be willing to give up any rights in the house and in exchange for that she would dismiss charges.

The judge stated he didn't "know what charges she's talking about," but found it difficult to believe she was "saying, well, . . . I'll ask the prosecutor in the criminal case to dismiss the criminal charges but I'm going to keep my restraining order."  The judge found it "pretty clear . . . that what [plaintiff] meant was you give me the house and I'm going to let you walk away from this whole thing.  That's what she was doing."  The judge concluded:

> So would that indicate that the plaintiff really believed that she's in some immediate danger from the defendant?  Not in my book.  To me it says I don't really

---

[3]  Defendant did not testify about this incident.  Plaintiff testified she was assaulted by defendant in the incident by defendant "grabbing [her] by [her] arms again" and "toss[ing] her to the floor."  She claimed she accidentally inflicted "a scratch on his neck" when she snatched at a piece of paper belonging to her that he was "waving" around.

A-0900-20

think anything like this is going to happen again and what I need to do is protect myself and my kids and I need to get that house and make sure that I can keep that house and that he understands that while we're not going to be together anymore, that his family should at least be able to live at peace in that house and I understand that, I understand that, but that's not the question here. That's a question for another day in another courtroom, [a] matrimonial judge will decide all of that, but I don't find that [plaintiff] is in any immediate danger from [defendant] and therefore I conclude that there is not a reason for her to have a restraining order going forward to protect her from further abuse.

The judge stated he was "not considering that [defendant] went to a hospital, . . . [and] is in therapy, all of those things." He noted

people can relapse, but does that mean [defendant] is going to get drunk or take drugs and go over to that house and attack [plaintiff]? Not at all when I consider the circumstances under which these allegations came about.[4] I don't think [defendant] is going to do that and I do believe he's contrite about what happened and he might be genuine in his attempt to make sure he doesn't fall off the edge with drugs and alcohol and end up hurting himself or others. So based upon all that I've said, I am dismissing the domestic violence complaint and corresponding temporary restraining order.

---

[4] The judge did not make any specific findings about "the circumstances under which these allegations came about," and we cannot discern what he might have been referring to.

A-0900-20

Notwithstanding the deference owed to the determinations made by family judges hearing domestic violence cases, Cesare v. Cesare, 154 N.J. 394, 411-12 (1998), we think it plain the final order entered in this case cannot stand. While we normally defer to family court factfinding, id. at 412, our scope of review is expanded where the focus of the dispute is on "the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quotation omitted). We do not, of course, accord any special deference to the trial court's interpretation of a statute, which is where the error lies in this case. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The law is well-settled that a judge's finding of a predicate act of domestic violence is only the first of a two-step process; the second step requires a finding, "upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6)," that a restraining order is necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. A plaintiff's fear of the defendant is not among the six factors the Legislature included in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6).[5]

---

[5] N.J.S.A. 2C:25-29(a) provides in part:

The only time a plaintiff's fear has received particular attention in a Silver analysis is when fear or alarm is an element of the underlying offense, as, for example, with terroristic threats, N.J.S.A. 2C:12-3(b), or subsection (a) or (c) of the harassment statute, N.J.S.A. 2C:33-4(a) or (c), none of which was at issue in this case. See Cesare, 154 N.J. at 402-05 (discussing relevance of plaintiff's fear in considering offenses of terroristic threats or harassment in the context of a domestic violence matter). But even those cases are instructive here as they teach that "[s]ome people are braver than others and less likely to be subject to intimidation," and thus that "[t]he criminality of the perpetrator's conduct" should not be "depend[ent] on the courage or timidity of the intended victim." Id. at 403 (quoting State v. Nolan, 205 N.J. Super. 1, 4 (App. Div. 1985) (explaining that judges presiding over domestic violence cases alleging

---

The court shall consider but not be limited to the following factors [in determining whether to grant a final restraining order]: (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse; (2) The existence of immediate danger to person or property; (3) The financial circumstances of the plaintiff and defendant; (4) The best interests of the victim and any child; (5) In determining custody and parenting time the protection of the victim's safety; and (6) The existence of a verifiable order of protection from another jurisdiction.

13

terroristic threats or harassment should employ an objective standard and therefore "not consider the victim's actual fear")).

What our Supreme Court has deemed critical in fulfilling the Legislature's intent in enacting the Prevention of Domestic Violence Act is that the judge consider the plaintiff's individual circumstances and the past history of the parties, within the context of the specific allegations of the complaint, "weigh[ing] the entire relationship" and "specifically set[ing] forth their findings of fact in that regard." Id. at 405. That was not done here. Instead of focusing on the factors in N.J.S.A. 2C:25-29(a)(1) to (6) and weighing the parties' entire relationship in conducting the second-prong Silver analysis, the court substituted its own test — the plaintiff's subjective fear of defendant. That was a plain error.

We do not hold that a court can never consider a plaintiff's fear, measured objectively, in determining whether the plaintiff is in immediate danger from the defendant. The factors in N.J.S.A. 2C:25-29(a)(1) to (6) are a non-exclusive list of considerations for a court to weigh in determining whether to grant an FRO. But a court is certainly not free to ignore "the statutory command to consider the previous history, if any, of domestic violence between the parties" and to substitute its own test for the second-prong Silver analysis as was done

14

here. See J.D. v. M.D.F., 207 N.J. 458, 479 (2011). Contrary to N.J.S.A. 2C:25-29(a)(1), the court did not make any findings about the parties' previous history of domestic violence, although there was obviously some history, and truncated the plaintiff's effort to elicit further testimony of defendant's prior threat to kill himself, his suicide attempt and subsequent hospitalization because it, erroneously, considered it irrelevant to the inquiry. Nor did the judge consider the existence of immediate danger to property, N.J.S.A. 2C:25-29(a)(2), or the best interests of plaintiff and the parties' three children, N.J.S.A. 2C:25-29(a)(4), notwithstanding that both appear relevant to the inquiry.

Even were we to allow, as we do, that a court might consider a plaintiff's fear, measured objectively, among other factors, in determining whether the plaintiff was subject to immediate danger from the defendant, that doesn't address the separate question of whether the plaintiff needs protection from further abuse.[6] The inquiries are not identical, especially considering that the

_____

[6] Although plaintiff's counsel did not object to the testimony of defendant's two witnesses about plaintiff's alleged offer to dismiss the restraining order in exchange for defendant giving plaintiff defendant's share of the house in the divorce on the basis of N.J.R.E. 408, we question whether such discussions were admissible under that rule, which generally bars evidence of settlement offers or negotiations. See N.J.R.E. 408 ("When a claim is disputed as to validity or amount, evidence of statements or conduct by parties or their attorneys in settlement negotiations, . . ., including offers of compromise or any payment in

15

settlement of a related claim, is not admissible either to prove or disprove the liability for, or invalidity of, . . . the disputed claim."). Although such evidence may be admitted for other purposes, see, e.g., Burns v. Burns, 223 N.J. Super. 219, 233 (Ch. Div. 1987) (holding in a suit brought by the plaintiff to require former husband to secure a "get," that 1967 rule 52(1) did not bar evidence that husband had offered to do so in exchange for wife's payment of funds to the parties' daughter, thus countering husband's claim his refusal was based on religious reasons), it was not properly admitted for the purpose it was proffered — plaintiff's lack of fear of defendant — as plaintiff's subjective fear is irrelevant to a second prong Silver analysis for reasons already explained. Although it arguably might be admissible to show plaintiff's motivation in seeking a restraining order was not to protect herself and the parties' children from further incidents like the one on the day of the standoff as she testified, but instead to secure a leg up in the divorce action, see Murray v. Murray, 267 N.J. Super. 406, 410 (App. Div. 1993), the allegations here were certainly "not ordinary domestic contretemps." Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995). As plaintiff properly notes, the cases in which we have cautioned trial courts against giving "unfair advantage to a matrimonial litigant," have largely been harassment cases in which the plaintiff was attempting to have trivial allegations branded domestic violence, see, e.g., Peranio v. Peranio, 280 N.J. Super. 47, 56 (App. Div. 1995) (holding defendant's statement "I'll bury you," uttered in the course of an argument during divorce not domestic violence), not cases such as this one involving a physical altercation between the parties in which their young children were also involved and ending with a three-hour stand-off with a SWAT team during which defendant set fires inside the parties' home.

If on remand defendant again contends these alleged discussions about settlement are in some way relevant to the issues the court must decide, the judge should weigh the probative value of the evidence against its prejudicial effect as required by N.J.R.E. 403, see Shankman v. State, 184 N.J. 187, 207 (2005), taking into account that victims of domestic violence often "bargain" with their abusers in order to maintain their safety and the safety of their children. See Herbert, Silver & Ellard, Coping with an Abusive Relationship: I. How and Why do Women Stay?, 53 J. Marriage & the Family 311 (1991) (cited in Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 892 (1992)). Even were

A-0900-20

purpose of the Act is "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18; State v. Hoffman, 149 N.J. 564, 584 (1997) (noting "[a]t its core, the 1991 Act effectuates the notion that the victim of domestic violence is entitled to be left alone," which "is, in essence, the basic protection the law seeks to assure these victims"); H.E.S. v. J.C.S., 175 N.J. 309, 329 (2003) (noting "[t]he law is clear that acts of actual violence are not required to support a finding of domestic violence"). Victims may be entitled to protection against further abuse even when the defendant does not pose an immediate threat to the plaintiff's safety. See, e.g., Pazienza v. Camarata, 381 N.J. Super. 173, 182 (App. Div. 2005) (finding plaintiff required FRO to prevent defendant from continuing to send unwanted communications intended to seriously annoy plaintiff "after he has

___

the court to find the discussions admissible and that plaintiff was willing to barter away a protective order, we would not deem that fact barred a finding that a final restraining order was necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. As we have before reminded, "in domestic violence matters, judges are more than mere referees." J.S. v. D.S., 448 N.J. Super. 17, 21 (App. Div. 2016). "[T]he integrity of the justice system and the fact-finding process is not subordinate to the singular interests of the parties." State v. Garron, 177 N.J. 147, 180 (2003). That a domestic violence plaintiff might be willing to barter away a restraining order, or later dismiss one in exchange for some financial security, is not determinative of whether that plaintiff is entitled to the protection of a final restraining order in accordance with the Prevention of Domestic Violence Act, a decision entrusted by the Legislature to the trial judge.

17

been told no").  The trial court erred in not considering whether plaintiff needed an FRO to either protect her from immediate danger or to prevent further abuse, considering the entirety of the parties' relationship, their continued need for further contact into the future given the ages of their children, the couple's past history of domestic violence as well as all of what occurred on the day of the standoff.  See Silver, 387 N.J. Super. at 128.

That brings us to our final point of error — the court's failure to consider each basis plaintiff alleged in her complaint to support the entry of a restraining order.  Although plaintiff alleged assault, harassment, criminal restraint and criminal mischief, the court considered only harassment.  It was not free to do so.  A plaintiff is entitled to have the court consider and rule on each theory of her complaint.  Although plaintiff's counsel focused on assault and harassment in her summation, there was no indication that plaintiff was waiving other pleaded grounds for relief.  The court's failure to consider each predicate act alleged and to "focus" only on harassment, had the predictable effect of the court failing to consider all of what occurred on the day of the standoff in considering the second Silver prong.  Indeed, the court never mentioned defendant's suicide attempt in the backyard within sight of his family, or that defendant's attack on plaintiff involved the parties' three young children, or his three-hour-standoff

18

with the SWAT Team, or the extensive damage, including fire damage, that plaintiff caused to the parties' home that day.

Because the court's failure to consider the other acts beyond harassment alleged in plaintiff's complaint and its misapprehension of the test of the second Silver prong appear from our review of the record to have pervaded the whole of its findings, we vacate the order dismissing plaintiff's domestic violence complaint, reinstate the TRO as amended by the judge presiding over the parties' divorce, and remand for a new hearing.

Although plaintiff urges us to find her entitled to entry of a final restraining order as a matter of law, we hesitate because the judge so limited the testimony about the prior history of domestic violence between the parties and made no real credibility findings. Accordingly, in an abundance of caution and respectful of the Family Part's "special jurisdiction and expertise in family matters," Cesare, 154 N.J. at 413, we remand for a new hearing with evidence to be admitted and evaluated consistent with the principles expressed herein.

Because the judge who heard the matter may have a commitment to his findings, the hearing should take place before a different judge. See N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 617 (1986).

Vacated and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20